## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ELIZABETH CARI
5450 Summerwood Court-C
Willoughby, OH 44094

     And

KIMBERLY NICHOLSON
9512 Preston Avenue
Cleveland, OH 44102-1724

     And

KIMBERLY GOLPHIN
10210 Robinson Avenue
Cleveland, OH 44125-1545

     And

LACRECIA MARTIN
787 E 131st St
Cleveland, OH 44108-2036

     And

JOSEPH MUNDY
8485 Eden Ct.
Streetsboro, OH 44214

     Plaintiffs,

       vs.

GEICO Secure Ins. Co.
15 GEICO Blvd.
Fredericksburg, VA 22406

CIVIL ACTION NO. 1:25-cv-02339-CEF

JUDGE: CHARLES E. FLEMING

FIRST AMENDED CLASS ACTION
COMPLAINT

[Jury Demand Endorsed Hereon]

And

GEICO Advantage Ins. Co.
15 GEICO Blvd.
Fredericksburg, VA 22406

And

GEICO Casualty Ins. Co.
15 GEICO Blvd.
Fredericksburg, VA 22406

And

GOVERNMENT EMPLOYEES
INSURANCE COMPANY
15 GEICO Blvd.
Fredericksburg, VA 22406

And

GEICO Choice Ins. Co.
15 GEICO Blvd.
Fredericksburg, VA 22406

Defendants.

Now come Plaintiffs ELIZABETH CARI, KIMBERLY NICHOLSON,

KIMBERLY GOLPHIN, LACRECIA MARTIN and JOSEPH MUNDY

("Plaintiffs"), individually and on behalf of all others similarly situated, and for

their Class Action Complaint against GEICO Secure Insurance Company, GEICO

Casualty Insurance Company, GEICO Advantage Insurance Company and

2

Government Employees Insurance Company (collectively referred to herein as "Geico"), state the following:

## I.      INTRODUCTION

1.   This lawsuit is related to another class action pending against several of the Geico defendants in this Court, before District Judge Dan A. Polster, Civil Action No. 1:24-cv-00736-DAP.

2.   Plaintiffs purchased automobile insurance policies for Ohio garaged vehicles from a Geico operating unit, as follows:

KIMBERLY NICHOLSON – Geico Advantage Ins. Co.

ELIZABETH CARI – Geico Casualty Ins. Co.

JOSEPH MUNDY – Geico Secure Ins. Co.

LACRECIA MARTIN – Government Employees Ins. Co.

KIMBERLY GOLPHIN – Geico Choice Ins. Co.

3.   All Geico operating units doing business in Ohio have the same centralized claim adjustment operation, using the same claims adjusters, forms, valuation vendor, policies and procedures, including the policies and procedures challenged in this lawsuit.

4.   All Geico operating units have the same management personnel and employees, and present themselves to the public as "Geico" without distinguishing between the various entities:

3

a. Government Employees identifies itself as "GEICO" at
https://www.geico.com/about/corporate/corporate-ownership/. As
Geico admits on its website, the operating "companies market
collectively under the trademark GEICO®."  As used in this
Complaint, the singular term "Geico" refers to that insurance business
and all of the operating company defendants.

b. All Geico operating units have the same telephone number, operate
from the same address, the same domicile state, and have the same
website.

c. All of the conduct alleged herein by any Geico operating company
was taken as agent for the operating company's principal,
Government Employees Insurance Company.

5.  Plaintiffs and the putative Class Members made first party insurance
claims when they suffered damage to their vehicles, and Geico's centralized
adjusting operation declared their vehicles a total loss, requiring Geico to pay the
actual cash value ("ACV") of those vehicles.

6.  Instead of paying ACV, as required by the insurance policies and Ohio
law, Geico, through its valuation vendor CCC Intelligent Solutions, Inc. ("CCC"),
reduced the payment amount by deducting an arbitrary "condition adjustment"
from the actual cost of comparable vehicles used to determine the ACV, even

4

though neither Geico nor CCC ever inspected the comparable vehicles so had no factual basis for making that deduction.

7.  CCC has never conducted a random sample or random inspection program of used car dealerships, either in Ohio or nationally, that would provide a statistically valid basis for its assumption that all dealer offered cars are in above average condition compared to average private passenger vehicles.

8.  Because of this practice Geico failed to pay ACV to each Plaintiff and all of the putative class members, breached the policy contract with Plaintiffs and the Class Members, and violated Ohio law.

9.     When purporting to determine the ACV of the loss vehicle, Geico "thumbed the scale" in its favor and to the detriment of its insureds by arbitrarily reducing the value of the comparable vehicles used in the calculation.

10.     The challenged arbitrary reduction is applied to each of the comparable vehicles, on top of adjustments for objectively verifiable differences such as mileage, options, and Make/Model/Trim.

11.     The comp vehicle condition adjustments reduced the value of the comparable vehicle, lowering the ACV paid on Plaintiffs' total loss claims.

12.     The valuation reports used by Geico neither itemize nor explain the basis for the comp vehicle condition adjustments, which are applied categorically without regard for the unique characteristics of comparable vehicles.

5

13.     Multiple comparable vehicles with varying mileage, trim level and options had their values reduced by the exact same amount, down to the last dollar. This reduction is contrary to appraisal standards and methodologies and is contrary to Ohio law, which does not permit arbitrary, unsupported deductions or un-itemized deductions.

14.     The only purported explanation for the downward adjustment to the price of comparable vehicles is a vague, cryptic statement claiming that the reduction "sets that comparable vehicle to Average Private condition…." There is no explanation as to why that is the case, how the amount is determined, or even any basis to believe that comparable vehicles were not already in such condition.

15.     In deducting the "condition adjustment" from the price of comparable vehicles, Geico assumed that every component of every comparable vehicle, all of which are used vehicles previously owned by private parties with varying mileage, were in better than average private passenger condition, including components such as the headliner and the glass for which such an assumption makes no logical sense.

16.     In Plaintiff Martin's case for example, Geico relied on 11 comparable vehicles ranging in mileage from 115,643 to 46,912 but subtracted the same $1,511 from the actual cost of all 11 vehicles and assumed without looking that all 11 comparable vehicles with widely differing mileage had a better than private

6

condition headliner, dashboard, carpets, seats, glass, body, paint, tires, and mechanical components. The CCC One® Market Valuation Report for Plaintiff Martin is attached as Exhibit 1.

17.    Geico made the exact same arbitrary deduction in differing amounts from the comparable vehicles used to derive the ACV for all Plaintiffs and putative class members.

18.    This pattern and practice of undervaluing total loss vehicles when paying automobile claims, through the systemic use of these invalid and deceptive comp vehicle condition adjustments, violates Geico's insurance policies with Plaintiffs and all of its Ohio insureds.

19.    This pattern and practice represent a plan, scheme and design to mislead and defraud Geico's insureds, and benefit Geico financially through improper and deceptive means.

20.    Through this unlawful practice, Geico failed to pay ACV, in breach of its insurance contract with Plaintiffs and the proposed Class members, and contrary to Ohio law.

21.    Further, Geico intended and did in fact defraud Plaintiffs and all customers in the Class.  This suit is brought to stop this unlawful practice and obtain relief for its victims.

## II.    PARTIES AND JURISDICTION

22.    Plaintiffs all reside in Northeast Ohio at the above listed addresses. The subject insurance policies were issued for vehicles garaged in Ohio, owned by Plaintiffs.

23.    Geico through its affiliates operates one of the largest property and casualty insurance companies in the United States. All of the Geico affiliate defendants regularly transact business in Ohio, and all are registered with the Ohio Department of Insurance to sell property and casualty insurance in Ohio.

24.     All acts alleged in this Complaint were taken by and through the authorized officers, agents, employees and representatives acting for Geico.

25.    The acts, practices, and policies alleged herein were conceived, adopted, implemented and originated from Government Employees for all its operating units and Geico underwriters in and for Ohio.

26.    Geico investigates, handles, and adjusts all insurance claims using the same policies and procedures, created, implemented, and required by Government Employees, regardless of which Geico operating unit was involved in issuing (or underwriting) the relevant policy. These common practices and procedures, including those being challenged by this lawsuit, are the same for all total loss claims. Therefore, all Ohio customers are affected in the same way, and by the same actions, of Government Employees through one of its operating units.

8

27.     Federal jurisdiction is proper in this case because the Court has original jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). CAFA applies because there is: (1) minimal diversity of citizenship; (2) a proposed class with at least 100 members; and (3) at least $5 million in controversy.

28.     GEICO Casualty Company is a Nebraska corporation with its principal place of business in Maryland, making it a citizen of both Nebraska and Maryland. 28 U.S.C. § 1332(c)(1).

29.     Plaintiffs are all citizens of Ohio, so there is minimal diversity among the parties as required under CAFA for original jurisdiction. 28 U.S.C. § 1332(d)(2)(A).

30.     Plaintiffs seek to represent a class of Geico insureds who number is the thousands, easily meeting CAFA's requirement that the proposed class include at least 100 members.

31.     The amount in controversy in this case exceeds the $5 million threshold for diversity jurisdiction under CAFA. 28 U.S.C. § 1332(d)(2).

## III.    THE COVERED TRANSACTIONS

32.     Geico's insurance policies provide Plaintiffs coverage for damage to a covered auto.

33.     Plaintiffs, and the proposed Class members, each suffered damage to their auto while insured by Geico.

34.     Plaintiffs and the proposed Class members made a first party claim for payment for damage to their vehicles, and Geico declared their vehicles to be a total loss.

35.     The dispute here is not about the amount of the loss to the vehicle (*i.e.,* how much damage it suffered and the cost to repair that damage), but rather this dispute involves interpretation of the policy, with Geico applying a deduction from ACV not permitted by the policy or Ohio law.

## IV.    THE POLICY PROVISIONS GOVERNING GEICO'S ACV PAYMENTS FOR TOTAL LOSS VEHICLES

36.     Geico's policies, which as substantively identical for all Plaintiffs and putative class members, provide coverage for damage to covered autos from collision:

> p. 10. SECTION III - PHYSICAL DAMAGE COVERAGES
>
> Your Protection For Loss Or Damage To Your Car
> * * *
>     p. 11 PART I - COMPREHENSIVE AND COLLISION COVERAGE
>     ***
>     Collision
>     1. We will pay for collision loss to the owned auto or non-owned auto for the amount of each loss less the applicable deductible.

10

37.     The policies further provide that the carrier can elect to repair/replace

the damage or pay the actual cash value of the damaged vehicle.

p. 12-13 LIMIT OF LIABILITY

The limit of our liability for loss:
1. is the actual cash value of the property at the time of the loss;
2. for the repair of the damaged property, will not exceed the prevailing
    competitive price to repair or replace the property at the time of loss,
    or any of its parts, including parts from non-original equipment
    manufacturers, with other of like kind and quality and will not include
    compensation for any diminution of value that is claimed to result
    from the loss. Although you have the right to choose any repair
    facility or location, the limit of liability for repair or replacement of
    such property is the prevailing competitive price which is the price we
    can secure from a competent and conveniently located repair facility.
    At your request, we will identify a repair facility that will perform the
    repairs or replacement at the prevailing competitive price;

38.     The policies state that actual cash value will include adjustments for

betterment and depreciation: "Actual cash value of property will be determined at

the time of the loss and will include an adjustment for depreciation/betterment and

for the physical condition of the property."

39.     The terms "actual cash value," "betterment," and "depreciation" are

identified in the policies as follows:

DEFINITIONS
 * * *
Under this Section, the following special definitions apply:
1. Actual cash value is determined by the market value, age, and condition
of the vehicle or property at the time the loss occurs less depreciation or
betterment.
2. Betterment is improvement of the auto or property to a value greater than
its pre-loss condition.

11

* * *

5. Depreciation means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

40.     This policy language is uniform among all of the Ohio automobile policies issued by Geico during the class period, as defined below.

41.     This Policy language can be interpreted reasonably to only permit adjustments for "condition" to be based on the actual physical condition of the vehicle in question, whether it is a loss vehicle or a comparable vehicle.

42.     By indicating that adjustments for condition will be based on actual physical condition this Policy language precludes Geico from deducting an assumed "condition adjustment" from the actual cost of the comparable vehicles.

43.     Geico defined the term ACV in its policies so as to lead a reasonable insured, armed only with the policy language, to believe that adjustments for condition will be based on the actual physical condition rather than an assumed condition.

44.     This case deals with claims where Geico purported to pay the actual cash value of a total loss to the vehicle, so Geico's definition of "betterment" does not apply here because the loss vehicle was not repaired so could not have been "improv[ed] … to a value greater than its pre-loss condition." At the very least the policy is ambiguous as to whether the un-specified, arbitrary comparable vehicle condition adjustment is a proper betterment deduction.

12

45.     Similarly, Geico's definition of "depreciation" does not apply to the situation where Geico applies a condition adjustment to comparable vehicles without actually comparing them to the loss vehicle, or at the very least is ambiguous as to whether the comp vehicle condition adjustment is a proper depreciation adjustment.

## V.     THE UNIFORM PROCESS GEICO USES TO DETERMINE THE ACV OF TOTAL LOSS VEHICLES

46.     The process used by Geico to determine ACV consists of several, uniform steps.

47.     Geico uniformly uses this same process for all its insureds.

48.     Initially, Geico determines if it will repair the vehicle or declare the vehicle a total loss and pay ACV.  This complaint does not challenge that aspect of Geico's conduct.

49.     If a vehicle is considered a total loss Geico, through its vendor CCC, utilizes a standard methodology to determine ACV referred to as the comparable methodology, or more frequently called the "comp" methodology. This Complaint does not challenge the use of the comp methodology, which is a recognized method permitted by the Ohio insurance regulations. The CCC One® Market Valuation Report for Plaintiff Martin is attached as Exhibit 1, as an example of the valuation method Geico used for every plaintiff and every proposed class member.

13

50.     First, CCC identifies comparable vehicles recently offered for sale in the local or regional market and determines a "List Price" or "Take Price" for those comp vehicles. In Plaintiff Martin's case 11 comparable vehicles were listed in the CCC report. That selection of comparable vehicles is not challenged in this Complaint.

51.     Second, CCC adjusts the price of the comparable vehicles to account for objectively verified differences in "Make/Model/Trim," "Options" and "Mileage." Plaintiffs do not challenge these objectively verified adjustments, which are standard in the vehicle appraisal industry.

52.     Third, CCC deducts from the comparable vehicle's price an improper and arbitrary sum deceptively called a "condition adjustment," which reduces the value of the comparable vehicles and ultimately the ACV payment made to the insured.

53.     That unspecified, improper and arbitrary deduction, divorced from the actual condition of the comps and the loss vehicle, is not consistent with the comp methodology, violates the Ohio insurance regulations incorporated in the policy, and is not a proper betterment or depreciation deduction under a reasonable interpretation of those terms.

54.     Geico failed to disclose and intentionally concealed the calculation of this improper comp vehicle "Condition adjustment" in the valuation reports

14

provided to Plaintiffs, so it was impossible for Plaintiffs to know how Geico arrived at the amount of the comp vehicles condition adjustment, as opposed to objectively verifiable adjustments for mileage, options, and Make/Model/Trim.

55.     Geico provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support any comp vehicle condition adjustment, much less the specific downward adjustment used in Plaintiffs' valuation reports.

56.     The improper deduction reduces the comparable vehicles' value and thus reduces the Base Vehicle Value shown on the valuation report, which is the weighted average of the comparable vehicles, and thereby improperly reduces Geico's ACV payments to the Plaintiffs and the proposed class members.

## VI.  GEICO'S DISTORTED VALUATION METHODOLOGY USED TO UNIFORMLY COMMIT THE UNLAWFUL CONDUCT CHALLENGED BY THIS COMPLAINT

57.     The CCC valuation methodology is not something chosen by Plaintiffs or any proposed class member.

58.     Geico used the CCC methodology to calculate all ACV payments to the proposed class members, and Geico's deduction of the comp vehicle condition adjustment is uniformly used in all such calculations.

59.     Geico's insureds have no part in deciding whether this deduction is applied. The way the amount of the deduction is reached is not revealed to the

15

insureds. Nor do consumers like Plaintiffs or the proposed class members have access to CCC.

60.     The comp vehicle condition adjustment uniformly violates the requirement in Ohio Administrative Code 3901-1-54(H)(2) that betterment deductions be "itemized and specified" because Geico never compared the actual condition of the comp vehicles to the condition of Plaintiffs' loss vehicles.

## VII.  GEICO UNDER-PAYS ACV IN VIOLATION OF THE INSURANCE CONTRACT AND OHIO LAW

61.     Adjustment of automobile total loss claims in Ohio is controlled by the Policy of insurance, but the policy and the actions of the carrier under it are governed by O.A.C. 3901-1-54.

62.     That rule imposes the mandatory standard which must be followed by an insurance carrier for Ohio losses.

63.     The regulations do not create a private right of action; rather, they are incorporated as terms and conditions of the insurance contract.  *McPheeters v. United Services Automobile Association*, 549 F.Supp.3d 737 (2021) (Ohio regulations are incorporated into insurance contracts formed in Ohio).

64.     As such, a violation of those regulations is a breach of the insurance contract. See, *Smith v. S. Farm Bureau Cas. Ins. Co*., 18 F.4th 976, 979(8th Cir. 2021) (if a regulation is incorporated into an insurance policy "a violation of the regulation is also a breach of contract.").

16

65.    The regulations control and limit the procedures a carrier may lawfully use when adjusting an automobile total loss. The regulations set a statutory floor. *McPheeters, supra*.

66.    The calculation of the total loss payment amount is tied to the "actual cost to purchase a comparable automobile less any applicable deductible."  O.A.C. 3901-1-54(H)(7).

67.    When the insurance carrier chooses to use the widely recognized comparable valuation method, as Defendants did here with respect to every member of the proposed class of insureds, the "actual cost to purchase" may be determined by "the average cost of two or more comparable vehicles in" either (a) the "local market" (b) areas "proximate" to the local market, if local market comparables are not available. *Id.* at (H)(7)(a) and (b).

68.    This is the method Defendants used for the named plaintiffs and the putative class members.

69.    Ohio law requires the carrier using this method to "maintain in the claim file the documentation used to determine the loss." *Id.* at (H)(7), para. following (f).

70.    Defendants violated these requirements, however, by using a method that is not permitted by the Ohio law, and specifically contradicts the Ohio requirements.

17

71.     Instead of making the total loss payment based on the "actual cost to purchase," Defendant obtained the "actual cost to purchase" but then reduced it.

72.     This is contrary to the Ohio regulation.  It is not a permitted valuation method in Ohio, and it is a breach of the insurance contract.

73.     Further, Defendant did not "maintain in the claim file the documentation used" to make the challenged reduction, in violation of (H)(7), para. following (f), thereby further violating Ohio law.

74.     The only reduction allowed by the regulation is described in section (H)(2) and (3) for either 'betterment' or 'depreciation,' which requires the carrier to "maintain all information relating to the reduction in the claim file."  O.A.C. 3901-1-54(H)(2). Defendants did not do so.

75.     Further, the CVCA in no way qualifies as either "betterment" or "depreciation." Betterment applies when the carrier repairs a vehicle and puts it in better condition than it was (i.e., you had a dented fender and you get a new, un-dented fender). And depreciation is simply a measure of lost value over time, and is not necessary or appropriate when you are basing the value on the actual cost of *used* vehicles (they already reflect depreciation).

76.     After Geico applied the improper deduction to reduce the Base Vehicle Value it issued an improperly reduced ACV payment to Plaintiffs and the proposed class members.

18

77.    These improperly reduced payments were not the ACV as required by the insurance policy and Ohio law.

78.    Geico reduced the ACV of total loss vehicles by the amount of the improper deduction, in breach of the policy and in violation of Ohio law.

79.    Geico's insurance policy requires Geico to pay the full ACV, not the reduced amount calculated and paid by Geico. Geico takes the contrary position and interprets the policy to permit the challenged comp vehicle condition adjustment.

80.    The parties have a current, legitimate and concrete dispute over that coverage issue; the interpretation of the policy; and application of Ohio law to that dispute.

## VIII.  CLASS ALLEGATIONS AND DEFINITION

81.    Plaintiffs bring this action on behalf of themselves and the following class:

> All Ohio residents who: 1) were insured by Geico under a motor vehicle policy providing first party coverage for vehicle damage issued by any of the Geico affiliates named as a defendant; 2) suffered damage to their auto determined to be a total loss, made a first party claim for coverage to Geico, and Geico made payment claimed to be the actual cash value of the vehicle; 3) the actual cash value payment was based on the amount shown on a CCC One® Market Valuation Report.  The class excludes Plaintiff's counsel; officers of the court handling this matter; and employees of Geico. The class period is the longest period of time permitted by Ohio law before the filing of this action, and thereafter (the "Class").

82.     Plaintiffs and the Class reserve the right under Rule 23 of the Civil Rules to amend or modify the class definition to include greater specificity, by further division into subclasses, or by limitation to particular issues.

83.     This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Civil Rules because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**a.     Numerosity**

84.     Members of the proposed Class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that there are hundreds of individuals in the Class.

**b.     Commonality**

85.     Common questions of law and fact exist as to all members of the proposed Class. Such questions include, but are not limited to:

- An interpretation of the policy, as to the scope and operation of "actual cash value;" as to the use of a uniform deduction not provided by the policy, and not disclosed in the policy; and as to the legal obligations of Geico to the Plaintiffs and the putative Class members;

- Whether Geico breached its insurance contract with the Plaintiffs and the Class members by applying the comp vehicle condition adjustment in order to reduce their ACV payments;

- Whether Geico's insurance contract is construed against Geico as to the meaning of the terms "ACV", "depreciation" and "betterment";

- Whether it is reasonable to calculate ACV without reducing the value of the comparable vehicles by the "Condition adjustment";

- Whether Geico committed fraud by applying the deduction in the transactions with the Plaintiffs and the Class members

- Whether the statute of limitation is tolled based on fraud;

- Whether Geico's conduct in applying the comp vehicle condition adjustment caused injury in fact to the Plaintiff and the Class members;

**c. <u>Typicality</u>**

86. The Plaintiffs' claims are typical of the claims of the proposed class. Plaintiffs and all members of the Class are similarly harmed by Geico's wrongful conduct.

**d. <u>Adequacy of Representation</u>**

87. Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed Class. Counsel who represent Plaintiffs are competent and experienced in class action and insurance litigation.

21

e.     **Superiority of Class Action**

88.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

89.     Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

f.     **Rule 23 Further Requirements**

90.     Inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for Geico.

91.     Adjudications with respect to individual Class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

92.     Geico has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

93.     Questions of law or fact common to the Class members predominate over any questions affecting only individual members.

## IX.    GEICO'S COMP VEHICLE CONDITION ADJUSTMENT IS ARBITRARY AND SPECULATIVE

94.     There is no provision in Geico's insurance contract for using the improper comp vehicle condition adjustment to determine ACV.

95.     Geico's un-specified comp vehicle condition adjustment is not based on objective criteria, nor on facts or data that is itemized (as required by law) so as to be able to be confirmed.  It cannot be verified as "correct" by Geico, Plaintiffs and the Class, or the Court.

96.     The amount of the comp vehicle condition adjustment, rather than actually seeking to reflect a difference in the "condition" of a comp vehicle as compared to the loss vehicle, is arbitrary and speculative.

97.     Geico begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of itself through the comp vehicle condition adjustment, which is inconsistent with the comp valuation methodology.

23

## X.      FACTUAL ALLEGATIONS

### A.      The Unlawful Conduct

98.      Geico represents to its policyholders, uniformly and in writing in their policy, that it will pay ACV less applicable deductible in the event the policyholder suffers a total vehicle loss.

99.      Instead, Geico breached this promise by paying an amount less than actual cash value minus deductible, which results in a change of the nature and scope of coverage under the policy, with the Plaintiffs and the Class Members receiving less from Geico than is due under law and under the terms of the policy.

100.     The unlawful reduction occurs because of the standard, uniform application of a comp vehicle "condition adjustment" designed to lower the value of the comparable vehicles and ultimately the Base Vehicle Value.

101.     The policy does not provide for any such deduction.

102.     Ohio law does not provide for such a deduction.

103.     The deduction is not based on any objective fact and has no relation to the operation of the marketplace for the purchase and sale of motor vehicles.

104.     The use of the deduction is arbitrary and fabricated, preventing a court, a policyholder, or anyone else from confirming whether the deduction is a correct amount for any vehicle.

105.   The policy terms "actual cash value," "depreciation" and "betterment" are subject to a reasonable interpretation that it does not include the arbitrary and speculative comp vehicle "condition adjustment."

106.   Because it is a contract drafted by Geico, the insurance policy must be construed in favor of Plaintiffs and against Geico.

B.      Geico paid Plaintiff less than what was required under the policy.

107.   Plaintiffs' insurance policy forms do not materially differ from each other or from the policy forms issued to the Class members, and the substantive provisions of all of those policy forms relevant to this matter are substantively identical.

108.   Geico issued the insurance policies to Plaintiffs and the Class members for vehicles garaged in Ohio.

109.   The insurance policy terms provided coverage for a total loss of the policyholder's listed, insured vehicle.

110.   The policy provides for payment for a property loss either: a) through repair or replacement; or, b) payment of actual cash value, less deductible.

111.   The policy makes no reference to, or mention of, a comp vehicle "condition adjustment" or other like deduction designed to thumb the scale in favor of Geico when determining ACV.

112.    Geico has not informed its insureds, through policy language, that a comp vehicle "condition adjustment" will be taken when determining ACV. Rather the policy language can be interpreted reasonably to only permit adjustments for condition to be based on the actual physical condition.

113.    Plaintiffs' insurance policies are standard form contracts with language that is materially identical to the language of the insurance policies of the Class Members.

C.    Plaintiffs' Property Damage Claims.

114.    Plaintiffs' vehicles insured by Geico were all damaged, and Plaintiffs submitted a first party insurance claim to Geico.

115.    Geico determined Plaintiffs' damaged vehicles were a total loss and that Geico owed the ACV of the vehicles at the time of loss to Plaintiffs.

116.    Geico inspected Plaintiffs' vehicles to determine their condition, using detailed condition inspection guidelines to determine the condition of key components of those vehicles prior to the loss.

117.    Geico then used CCC to supposedly determine the ACV of Plaintiffs' vehicle, for the purpose of paying Plaintiffs' insurance claims.

118.    At Geico's request CCC generated the "Market Valuation Report" for each Plaintiff's vehicle using the above-described distorted comp methodology and

provided it to Geico. For example, the MVR for Plaintiff Martin attached as Exhibit 1.

119. The CCC valuation methodology uses a weighted average of adjusted values of "comparable vehicles" to arrive at a "Base Vehicle Value," which is then adjusted to account for the observed condition of the Plaintiffs' vehicles to arrive at ACV.

120. Plaintiffs only challenge the deduction of the comp vehicle condition adjustment to reduce the price of the comparable vehicles and ultimately lower the calculated Base Vehicle Value.

121. The Valuation Reports all state that the adjustments to the price of the comparable vehicles are "made to reflect differences in vehicle attributes, including mileage and options," which is at best a fraudulent half-truth because the comp vehicle condition adjustment does not reflect the actual attributes of the comp vehicles, which are never inspected.

122. The section of the Valuation Reports that purportedly explains the valuation methodology, which is uniform for all of the reports, does not indicate that the value of the comparable vehicles is also lowered through the arbitrary comp vehicle "condition adjustment."

123. The comp vehicle condition adjustment is not a proper deduction for either "deprecation" or "betterment" under a reasonable interpretation of those

27

terms and is inconsistent with a reasonable insured's understanding of how depreciation and betterment are defined.

124.   The CCC valuation methodology, with the improper comp vehicle condition adjustment removed and backed out of the calculation, yields an accurate ACV.

125.   The amount of the comp vehicle condition adjustment can be identified for every member of the Class from Geico's business records and data, including the data used to create the "Market Valuation Report" for the class members' vehicles and also used by Geico to create a "Total Loss Settlement Explanation" document (form CL-300H (6-15)) sent by Geico to its insureds.

126.   Geico maintains in its database all data needed to determine the damages suffered by every Class member.

127.   This lawsuit seeks a determination of the coverage, the scope and interpretation of the policy, and a declaration that Geico improperly calculated "actual cash value" in breach of the policy; the condition adjustment is a breach of the policy; is contrary to Ohio law, including but not limited to *Davis v. Geico Casualty Co.,* 659 F.Supp.3d 843 (S.D. Ohio 2023)(granting summary judgment to policyholder class because ACV payment for the cost to acquire replacement car must include all costs and if the insurance company wanted to exclude them it was required to say so in the policy), is an improper, unlawful deduction in a discrete

and identifiable amount, and is an injury in fact and a direct and concrete harm to Plaintiffs and each member of the proposed Class.

## XI.   CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

128.   Plaintiffs repeat and re-allege each and every allegation set forth in all the foregoing paragraphs as if fully set forth herein.

129.   Plaintiffs and the Class Members contracted for insurance coverage on their listed vehicles, including first party coverage for damage to those vehicles.

130.   Plaintiffs and the Class Members satisfied all duties and conditions owed under those contracts, or same were waived.

131.   Geico's deduction of the comp vehicle condition adjustment from the value of the comps results in Geico not paying ACV as required by the insurance policies, and results in a breach of the policy contract by Geico and damage to the Plaintiffs and the Class members.

132.   Geico breached the insurance contract with Plaintiffs and each Class Member in the same way and the damages suffered by each can be determined in the same manner on a class-wide basis.

133.   Geico breached the contract because, while the contract required Geico to pay the ACV of a total loss vehicle, minus deductible, Geico did not pay

ACV minus deductible, but a lesser amount due to deduction of the improper comp vehicle condition adjustment.

134.    The comp vehicle condition adjustment is inconsistent with a reasonable interpretation of the terms "depreciation" and "betterment" in the insurance policies.

135.    The Ohio insurance regulations, Ohio Administrative Code 3901-1-54, are incorporated in and are part of the insurance policies issued by Geico and are cited by Geico in the CCC Valuation Reports as governing the ACV calculation.

136.    The Ohio Administrative Code provides: "In settlement of claimants' automobile total losses on the basis of actual cash value …, an insurer which elects to offer a cash settlement to claimant shall base the offer upon ***the actual cost to purchase a comparable automobile*** less any applicable deductible amount contained in the policy, and/or deduction for betterment as contained in paragraph (H)(2) of this rule." OAC § 3901-1-54(H)(7) (emphasis added).

137.    OAC § 3901-1-54(H)(2) provides: "If an insurer reduces a claim amount because of betterment …, it shall maintain all information pertaining to the reduction in the claim file. ***Such deductions shall be itemized and specified*** on the written estimate as to dollar amount and shall be appropriate for the amount of deductions." (emphasis added).

138.    The comp vehicle condition adjustment is not itemized and specified on the CCC valuation report and is not an appropriate betterment deduction because betterment must be detailed and there is no detail concerning the condition of the comp vehicles. Further, Geico's insurance policies define betterment as only applying when a replacement vehicle is provided to the insured that is in better condition than the loss vehicle, which obviously does not apply when Geico instead pays ACV.

139.    The relevant Ohio regulations require a detailed analysis of why the comp vehicles were in better condition than "Average Private" condition. Having never inspected the comp vehicles, Geico could not provide that analysis. In fact, Geico has no documentation justifying the comp vehicle condition adjustment for any Plaintiff or Class member.

140.    This suit seeks an interpretation of the contract, in light of the Ohio insurance regulations incorporated into the contract, and relief from the breach alleged herein.

**Implied covenant of good faith and fair dealing**

141.    Geico also breached the implied covenant of good faith and fair dealing in the insurance contract with Plaintiffs and the proposed Class members.

142.    In Ohio, "[e]very contract, no less in insurance or consumer transactions, has an implied covenant of good faith and fair dealing to it." *Jokic v.*

31

*State Auto. Mut. Ins. Co.,* 2005-Ohio-7044, 2005 Ohio App. LEXIS 6359, ¶ 34

(Dec. 29, 2005) (citation omitted), *appeal denied* 110 Ohio St. 3d 1438 (2006).

143.   Put another way, this is "an implied undertaking not to take

opportunistic advantage in a way that could have not been contemplated at the time

of drafting, and which therefore was not resolved explicitly by the parties."

*Lucarelli v. Farmers Mut. Ins. Co.*, 152 Ohio St. 3d 453, ¶ 42 (2018) (quotation

omitted).

144.   Geico chose to apply the comp vehicle condition adjustment to lower

its ACV payments to Plaintiffs and the Class members even though that deduction

is inconsistent with a reasonable interpretation of the policy terms.

145.   Geico likewise did not provide for, or even mention in the insurance

policies, the use of the comp vehicle condition adjustment to lower the ACV

payment made to its policyholders.

146.   Geico is more skilled in these matters than its insureds and thereby

has an unfair advantage over its insureds.

147.   Geico had a duty to act reasonably, and to refrain from taking unfair

advantage of its customers, when determining ACV.

148.   By doing the opposite, and applying the comp vehicle condition

adjustment not supported by the policy or a reasonable interpretation of its terms,

not consistent with Ohio law, and which is solely the product of Geico's unlawful

distortion of the comp vehicle valuation methodology, and by doing the foregoing with the purpose of paying insureds less than would have been paid but-for this activity, Geico breached the covenant of good faith and fair dealing, all to the damage of the named Plaintiffs and the Class.   COUNT

## COUNT II
### (Declaratory Judgment)

149.    The Defendants engaged in a scheme to cheat and defraud their customers, including the named plaintiffs and the putative class members, by the foregoing conduct.

150.    Defendants entered into the subject policies, and collected the premiums for them, promising to pay ACV in the event of a total loss.

151.    At that time, Defendants did not intend to pay ACV in the event of total loss, and knew they would pay an amount less than total loss.

152.    Defendants had no present intent to perform the policy—payment of ACV for total loss—as they had written it.

153.    Entering a contract with no present intent to perform is a tort under substantive Ohio state law: "when the person who makes his promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise[, i]n such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent. Tibbs v. National Homes Constr. Corp. (1977), 52 Ohio App.2d 281, 287

(Emphasis sic)" and see, Martin v. Ohio State University Foundation, 139 Ohio App. 3d 89, 98 (Ohio Ct. App. 2000)

154.    As to the general elements of fraud, the "who, what, when, where, and how":  Each Defendant through their selling agents (who); at the time that the subject policy was sold and at the time a total loss claim was made (when); in the language of the policy and in uniform written representations to the customer (where), promised to pay ACV, knowing at the time that LESS than ACV would be paid (how).

155.    As further badges of this fraud, and in furtherance of its commission, Defendants engaged in the settlement practice of inserting an "appraisal" clause into their insurance policies in connection with the subject payment for total loss.

156.    Defendants structured this clause to require PLAINTIFF to pay additional amounts of money for 'appraisal' if a challenge was made to the settlement process used (and described above) for paying the full amount of ACV required by both the policy language, and Ohio law.

157.    Defendants were aware, at the time, that the amount of money this would settlement practice would cost any customer would make it virtually certain that the customer would not be willing to proceed, since in many cases, the cost of the appraisal process (hiring an appraiser, paying an umpire, time and expense of

34

the process, and potentially hiring an attorney) would be MORE than the deficiency in the ACV payment.

158. Further, Defendants intentionally crafted their policy language on the appraisal process to prevent the customer from recovering the cost of the appraisal, even if they prevailed.

159. For that reason, in EVERY case of appraisal, no matter what amount is awarded, the customer always receives less than the award (that is, less than ACV), since they must deduct from that payment the cost for the appraisal.

160. This conduct violates O.A.C. 3901-1-54(G)(10) which prohibits the use of any settlement practice that forces the claimant to litigate the issue to obtain ACV: "(10) An insurer shall not use settlement practices that result in compelling first party claimants to litigate by offering substantially less than the amounts claimed compared to the amount ultimately recovered in the action brought by such claimants."

161. That conduct by Defendants breached the insurance contract, by violating section (G)(10) which is incorporated into the policy.

162. Defendants intended to use, and did use and do use, this improper settlement practice to further their fraudulent system of underpaying ACV, and to prevent customers from receiving the full benefit of Defendants' promise to "pay ACV" and not some amount less than ACV.

163.    Defendants did not reveal this scheme to their customers, and intended thereby to underpay ACV, where failure to pay ACV and knowing in advance the amount of ACV would never be paid to the class, was a direct intent not to perform the subject contract, and constitutes fraud under Ohio law.

164.    Finally, Defendants are aware that courts have found the challenged practice to state a claim on which relief may be granted, and also to constitute fraud and fraud in the inducement.  See *McGowan v. Progressive Preferred Ins. Co.*, 281 Ga. 169, 172 (2006). ("Walker's fraud, breach of contract, and RICO claims involve more than just the actual cash value of her car. Based on the allegations in Walker's complaint, this case does not involve a good faith dispute over what State Farm needed to pay Walker for her totaled vehicle, but an alleged pre-existing scheme between State Farm and CCC to ensure that no one would be properly paid under State Farm's insurance contracts. The damages naturally flowing from this alleged fraudulent scheme and attendant breach of contract included the value of Walker's car, the expense that Walker incurred by not having use of a car, and the expense that Walker incurred by being forced to hire an appraiser to show that her car was being undervalued.")

165.    Plaintiffs seek a declaration of their rights under the subject contract, including the foregoing conduct, there being a current, live controversy between them for which they are entitled under law to declaratory relief.

36

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ELIZABETH CARI, KIMBERLY NICHOLSON, KIMBERLY GOLPHIN, LACRECIA MARTIN and JOSEPH MUNDY, individually and on behalf of all others similarly situated, pray for a judgment against GEICO Secure Insurance Company, GEICO Casualty Insurance Company, GEICO Advantage Insurance Company, Geico Choice Ins. Co., and Government Employees Insurance Company, as follows:

1.      For an Order certifying this Ohio-only Class, as defined herein, and appointing Plaintiffs as Class Representatives and below counsel to represent the Class;

2.      For injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class Members, and for a declaration of the rights and responsibilities under the insurance policies and under law;

3.      For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined at trial;

4.      For an award of statutory damages and punitive damages, as allowed by law in an amount to be determined at trial;

5.      For an award of restitution or disgorgement, in an amount to be determined at trial;

6.      For an award of attorneys' fees, costs, and litigation expenses, as proper and as allowed by law;

7.      For pre- and post-judgment interest on all amounts awarded; and

8.      Such other and further relief in favor of Plaintiffs and the Class Members as the Court may deem just and proper.

> /s/ Patrick J. Perotti
> _____
> Patrick J. Perotti, Esq. (#0005481)
> Frank A. Bartela, Esq. (#0088128)
> DWORKEN & BERNSTEIN CO., LPA
> 60 South Park Place
> Painesville, OH 44077
> Phone: (440) 352-3391
> Fax: (440) 352-3469
> Email:  *pperotti@dworkenlaw.com*
>          *fbartela@dworkenlaw.com*
>
> James A. DeRoche (#0055613)
> GARSON JOHNSON LLC
> 2900 Detroit Avenue
> Van Roy Building 2nd Floor
> Cleveland, OH 44113
> Phone: (216) 696-9330
> Fax: (216) 696-8558
> Email: *jderoche@garson.com*
>
> Erik D. Peterson (PHV to be filed)
> ERIK PETERSON LAW OFFICES, PSC
> 110 West Vine Street, Suite 300
> Lexington, KY 40507
> Phone:  800-614-1957
> Email:  *erik@eplo.law*
>
> Counsel for Plaintiffs and the Putative Class

**JURY DEMAND**

Plaintiff hereby demands a trial by jury comprised of the maximum number of jurors allowed by law.

/s/ Patrick J. Perotti
Patrick J. Perotti, Esq. (#0005481)
*Counsel for Plaintiff and the putative class*